******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************************

# DOMINIQUE AVILES ET AL. *v.* REGINA BARNHILL ET AL.
## (AC 44587)

Prescott, Seeley and Sheldon, Js.

*Syllabus*

The plaintiffs sought to recover damages from the defendant landlord, H Co., for injuries they sustained as a result of H Co.'s alleged negligence with respect to an off premises attack by a dog. H Co. owned a multifamily home, which it leased to the defendant B. The defendants M, G, and B were the owners and/or keepers of the dog, which lived with B. The dog ran from H Co.'s premises to the plaintiffs' premises and attacked the plaintiffs, severely injuring them. The trial court granted H Co.'s motion for summary judgment, reasoning that, because it was undisputed that the incident occurred off H Co.'s premises and because Connecticut's common law provides that a lessor owes no duty of care beyond its premises, H Co. owed no duty to the plaintiffs. On the plaintiffs' appeal to this court, *held*:

1. The trial court correctly concluded that H Co. did not owe the plaintiffs a duty of care under a theory of premises liability because the dog attack did not occur on property that it controlled; moreover, the plaintiffs' argument that our Supreme Court's decision in *Giacalone* v. *Housing Authority* (306 Conn. 399) broadened the scope of a landlord's duty under a theory of premises liability was unavailing because their argument was based on a misreading of the record in that case and because the court in *Giacalone* did not expand a property owner's duty beyond the property's boundary line.

2. This court rejected the plaintiffs' request that this court adopt a provision (§ 379A) of the Restatement (Second) of Torts, which, if its elements were met, would extend liability to H Co. regardless of where the dog attack took place: our appellate precedent makes clear that a landlord does not owe a duty of care to someone who sustains injuries from a dog if the attack occurs beyond the landlord's property line in an area over which the landlord has no control; moreover, although neither our Supreme Court nor this court has expressly declined to adopt § 379A, both courts have adhered in dog bite cases to traditional principles of premises liability, which run counter to § 379A, and, thus, adopting § 379A would require this court to depart from appellate precedent, which it was not free to do.

Argued September 19, 2022—officially released January 31, 2023

*Procedural History*

Action to recover damages for, inter alia, the defendants' alleged negligence, and for other relief, brought to the Superior Court in the judicial district of New London, where the named defendant et al. were defaulted for failure to appear; thereafter, the court, *Calmar, J.*, granted the motion of the defendant H-Squared Construction, LLC, for summary judgment and rendered judgment thereon, from which the plaintiffs appealed to this court. *Affirmed.*

*James M. Harrington*, for the appellants (plaintiffs).

*Joseph M. Busher, Jr.*, for the appellee (defendant H-Squared Construction, LLC).

*Opinion*

SEELEY, J. The plaintiffs, Dominique Aviles, individually and on behalf of her minor child, Xavier Bauza,[1] appeal from the summary judgment rendered by the trial court in favor of the defendant landlord, H-Squared Construction, LLC, on two counts of the plaintiffs' complaint asserting negligence against the defendant arising from an off premises attack by a dog owned by one of its tenants.[2] On appeal,[3] the plaintiffs argue that the court incorrectly determined that the defendant could not be held liable as a matter of law because, contrary to the court's conclusion, Connecticut case law provides that a landlord has a duty of care under a premises liability theory to use reasonable care to prevent injuries to third parties from known vicious dogs housed on the property by a tenant, including, in certain circumstances, from a dog attack occurring off of the landlord's property. The plaintiffs also argue that this court should adopt § 379A of the Restatement (Second) of Torts (§ 379A),[4] which, if its elements are met, would extend liability to the defendant regardless of where the attack took place. We disagree with the plaintiffs' first claim and conclude that, within the specific context of off premises dog attacks, landlords do not owe a duty of care to injured third parties under a theory of premises liability. We also decline to adopt § 379A for this particular context because we determine that doing so would be contrary to our appellate precedent. Accordingly, we affirm the judgment of the trial court.

The record before the court, which we view in the light most favorable to the plaintiffs as the nonmoving parties, reveals the following facts and procedural history. The defendant is the owner and landlord of 151-153 Golden Street, a multifamily home in Norwich. Regina Barnhill leased 151-153 Golden Street from the defendant at all relevant times. Barnhill, along with Keith A. McGraw and Michael J. Gomez, were the owners and/ or keepers of a dog named " 'Yank' " that lived with Barnhill at 151-153 Golden Street. On June 16, 2016, Yank ran unleashed from 151-153 Golden Street to 22 Page Street, the plaintiffs' residence, and attacked and severely injured the plaintiffs.[5] The two residences,151-153 Golden Street, where the dog was housed, and 22 Page Street, where the plaintiffs were injured, have adjoining backyards.

The plaintiffs commenced this action on April 30, 2018. The complaint, dated April 19, 2018, contained fourteen counts. Counts thirteen and fourteen were brought against the defendant and sounded in negligence. The complaint alleges that the plaintiffs' injuries were the result of the negligence and carelessness of the defendant because it knew or should have known of the existence of the dangerous condition posed by Yank and failed to secure the property and prevent Yank's escape, advise Yank's alleged owners and/or

keepers to remove Yank from the premises, inspect the premises periodically to ensure it was safe and posed no danger to the public, take adequate measures to remedy and/or eliminate the dangerous condition posed by Yank, and/or warn the plaintiffs of the dangerous condition.

On June 28, 2018, the defendant filed a motion for summary judgment as to the thirteenth and fourteenth counts of the plaintiff's complaint. The defendant argued that it was entitled to summary judgment as a matter of law because, consistent with appellate precedent, it owed no duty to the plaintiffs under a premises liability theory because the attack did not take place on the defendant's premises. The defendant also argued that it was entitled to summary judgment because the defendant was not aware that Yank lived on the premises, and it had no knowledge that Yank was dangerous.

The plaintiffs filed a memorandum of law in opposition to the motion for summary judgment in which they conceded that the incident did not occur on the defendant's premises, 151-153 Golden Street. The plaintiffs argued, nonetheless, that summary judgment was improper because § 379A was a "notable exception" to premises liability law and a genuine issue of material fact existed as to whether its prongs were met. Specifically, the plaintiffs maintained that a genuine issue of fact existed as to whether the defendant knew that Yank resided at the property. Although two members of the defendant, John Hardy and Derek Hatch, asserted in their affidavits submitted in support of the defendant's motion for summary judgment that they were not aware of Yank's presence, the plaintiffs argued that there was obvious evidence demonstrating that Yank lived there, and that, pursuant to comment (b) to § 379A, "knowledge may be . . . found by implication from all of the circumstances existing at the time of the lease." 2 Restatement (Second), Torts § 379A, comment (b), pp. 283–84 (1965). Further, the plaintiffs argued that, even if the defendant was not initially aware of Yank's existence, it certainly was by the time of the successive lease renewals between the parties, and, because comment (g) to § 837 of the Restatement (Second) of Torts[6] provides in relevant part that, "[i]f at the time that the lessor renews the lease [it] knows that activities are being carried on . . . [it] is liable for the continuance of the interference after the renewal," the first prong of § 379A was thereby satisfied. 4 Restatement (Second), Torts § 837, comment (g), pp. 153–54 (1979). Thus, the plaintiffs argued before the trial court that, because this genuine issue of material fact existed, summary judgment should be denied.

The court, *Calmar, J.*, initially denied the defendant's motion. The court reasoned that, although generally a landlord's duty applies only to areas of the premises over which the landlord retains control, § 379A is "an

exception to the general rule . . . ." Because § 379A requires that the landlord consent to the dog's activity on the premises or know of the dog's vicious propensities, both of which were disputed in this case, the court determined that a genuine issue of material fact existed and, therefore, denied the defendant's motion.

Thereafter, the defendant filed a motion for reconsideration in which it argued that the court's reliance on § 379A was misplaced because our appellate courts had not adopted it and, moreover, § 379A is inconsistent with Connecticut's common law. Following a hearing on the motion, the court vacated its initial order and granted the defendant's motion for summary judgment. In its memorandum of decision, the court explained in relevant part: "Although [the] court was initially persuaded by the belief that appellate courts previously had applied § 379A and/or would apply § 379A given the right factual scenario and if proper evidence was presented, it is clear upon closer examination and review that the appellate courts have not yet adopted [§ 379A] and Connecticut's common-law precedent does not support this exception." The court further reasoned that, because Connecticut's common law unequivocally provides that a lessor owes no duty of care beyond its premises, and because it is undisputed that the incident in this case occurred off the defendant's premises, the defendant owed no duty to the plaintiffs. Accordingly, the court determined that the defendant met its burden of demonstrating that there was no genuine issue of material fact, and granted the motion for summary judgment in favor of the defendant on counts thirteen and fourteen of the plaintiff's complaint. This appeal followed.

The plaintiffs claim on appeal that the court incorrectly concluded, as a matter of law, that the defendant did not have a duty to prevent its tenant's dog from harming a nontenant beyond the boundaries of its property, an area over which the defendant did not exercise control. The plaintiffs specifically argue that in *Giacalone* v. *Housing Authority*, 306 Conn. 399, 51 A.3d 352 (2012), our Supreme Court "broadened the scope of a landlord's duty under a premises theory of liability" by recognizing landlord liability for a tenant's dog attack even when the attack did not occur within the boundaries of the property on which the dog lived and over which the landlord exercised control. Additionally, although conceding that § 379A has not been explicitly adopted by Connecticut courts, the plaintiffs argue that this court should adopt § 379A because it "strikes a reasonable balance between concerns over the expansion of landlord liability and the need to hold accountable those landlords who have knowledge of dangerous conditions on their property and who fail to act."

The defendant argues that the court properly rendered summary judgment in its favor because it is undis-

puted that the underlying incident took place off the defendant's property and our case law repeatedly has held that a lessor's duty does not extend to land outside of its control. The defendant further argues that § 379A is inconsistent with our case law and, therefore, we should decline to adopt it.[7] We agree with the defendant.

Before turning to our analysis, we must first set forth the standard of review that governs this appeal. "Our standard of review with respect to a court's ruling on a motion for summary judgment is well settled. Practice Book § [17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits, and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . .

"[I]ssue-finding, rather than issue-determination, is the key to the procedure. . . . [T]he trial court does not sit as the trier of fact when ruling on a motion for summary judgment. . . . [Its] function is not to decide issues of material fact, but rather to determine whether any such issues exist. . . . Our review of the decision to grant a motion for summary judgment is plenary. . . . We therefore must decide whether the court's conclusions were legally and logically correct and find support in the record. . . . A material fact . . . [is] a fact which will make a difference in the result of the case." (Citation omitted; internal quotation marks omitted.) *Adams* v. *Aircraft Spruce & Specialty Co.*, 215 Conn. App. 428, 440–41, 283 A.3d 42, cert. denied, 345 Conn. 970, A.3d (2022). Furthermore, although "[i]ssues of negligence are ordinarily not susceptible of summary adjudication but should be resolved by trial in the ordinary manner . . . [t]he issue of whether a defendant owes a duty of care is an appropriate matter for summary judgment because the question is one of law." (Internal quotation marks omitted.) *Goody* v. *Bedard*, 200 Conn. App. 621, 631, 241 A.3d 163 (2020); see also *Gonzalez* v. *O & G Industries, Inc.*, 341 Conn. 644, 680, 267 A.3d 766 (2021) ("[t]he existence of a legal duty is a question of law over which we exercise plenary review" (internal quotation marks omitted)).

I

The plaintiffs first claim that the court incorrectly concluded, as a matter of law, that the defendant did not owe them a duty of care because the dog attack

did not occur on property controlled by the defendant. Specifically, they argue that the scope of landlord premises liability was expanded by our Supreme Court in *Giacalone* v. *Housing Authority*, supra, 306 Conn. 399. Conversely, the defendant argues that the court correctly determined that it owed no duty of care to the plaintiffs because appellate case law repeatedly has held that a landlord's duty does not extend to uncontrolled land beyond the landlord's premises. According to the defendant, our Supreme Court did not expand that principle in *Giacalone*, rather, the court merely reaffirmed it. We agree with the defendant.

We begin our analysis with a discussion of the relevant principles of negligence and premises liability. "In a negligence action, the plaintiff must meet all of the essential elements of the tort in order to prevail. These elements are: duty; breach of that duty; causation; and actual injury. . . . [T]he existence of a duty of care is a prerequisite to a finding of negligence . . . . The existence of a duty is a question of law and only if such a duty is found to exist does the trier of fact then determine whether the defendant [breached] that duty in the particular situation at hand. . . . If a court determines, as a matter of law, that a defendant owes no duty to a plaintiff, the plaintiff cannot recover in negligence from the defendant. . . .

"The general rule is that a landlord has a duty reasonably to maintain property over which he exercises control. . . . That duty serves to protect entrants (invitees, licensees, trespassers) and tenants. . . . The duty does not, however, extend to uncontrolled land such as neighboring property or public lands." (Citations omitted; internal quotation marks omitted.) *Charles* v. *Mitchell*, 158 Conn. App. 98, 108–109, 118 A.3d 149 (2015); see also *Stokes* v. *Lyddy*, 75 Conn. App. 252, 260, 815 A.2d 263 (2003).

In *Stokes*, this court, as a matter of first impression, held that a landlord does not owe a common-law duty to nontenants who, while outside the boundaries of the premises, are bitten by a tenant's dog. *Stokes* v. *Lyddy*, supra, 75 Conn. App. 253–54. In that case, a dog owned by the landlord's tenant escaped the premises and attacked the plaintiff as she walked along a nearby public sidewalk. Id., 254. The attack did not occur on any portion or common area of the landlord's property. Id. On appeal, the plaintiff argued, inter alia, that the landlord should be held liable because the landlord had a duty under general principles of premises liability to maintain the nearby public property in a reasonably safe manner. Id., 259–60. This court disagreed and determined that, pursuant to traditional principles of premises liability, a landlord's duty does not extend to uncontrolled land such as a public sidewalk and, therefore, the landlord could not be held liable under a theory of premises liability. Id., 260–62.

This court addressed the issue again in *Charles* v. *Mitchell*, supra, 158 Conn. App. 98. In *Charles*, as in *Stokes*, the tenant's dog escaped the premises and attacked the plaintiff while she was on a public street. Id., 101. On appeal, the plaintiff argued that a landlord should be held liable for an off premises dog attack "so long as the resulting harm was reasonably foreseeable." Id., 110. This court disagreed, and, citing to *Stokes*, reaffirmed the traditional principle that a landlord's duty does not extend to uncontrolled land and, therefore, a landlord cannot be held liable for injuries sustained from an off premises dog attack. Id., 109–10.

In *Giacalone*, our Supreme Court was asked to resolve the sole issue of whether a landlord may be held liable under the general theory of premises liability for a dog bite injury, or whether the landlord must have direct care of, or control over, the dog and, therefore, fall within the purview of the dog bite statute to be liable. *Giacalone* v. *Housing Authority*, supra, 306 Conn. 401. The court determined that a claim brought pursuant to the dog bite statute, General Statutes § 22-357, and a claim brought under a premises liability theory are two independent and separate causes of action, and a landlord can be held liable under the "ordinary—indeed, hoary—principles of common-law liability . . . ." Id., 407. The court reasoned that it is a matter of well settled common law that a landlord owes a duty to alleviate dangerous conditions in areas of the premises over which it retains control, and that "a vicious dog may qualify as a dangerous condition under the traditional, common use of this term because this court has long recognized that a landlord's common-law obligation to alleviate known dangers exists independent of the specific source of that danger." Id., 408. Thus, the court concluded that a landlord "must take reasonable steps to alleviate the dangerous condition created by the presence of a dog with known vicious tendencies in the common area of the property" over which the landlord retains control, and that "[w]hat defines the landlord's duty is the obligation to take reasonable measures to ensure that the *space* over which it exercises dominion is safe from dangers, and a landlord may incur liability by failing to do so." (Emphasis in original.) Id.

Despite the holdings in *Stokes* and *Charles*, and of the undisputed fact that, in the present case, the incident took place off the premises, the plaintiffs claim that the defendant can be held liable under a theory of premises liability because of our Supreme Court's decision in *Giacalone*. They argue, on the basis of their reading of *Giacalone*, that our Supreme Court broadened the scope of premises liability in that case by determining that the landlord was liable even though the dog attack occurred outside of the premises on which the dog was housed. The plaintiffs contend that

*Giacalone* stands for the proposition that "a property owner's duty under premises liability . . . does not evaporate if that harm crosses the property's boundary line." The plaintiffs additionally argue that the court's failure to discuss in detail the location of the dog attack further supports their contention that the location of the harm is not dispositive in determining whether a landlord owes a duty under a theory of premises liability.

The plaintiffs' argument fails for two reasons. First, it rests on a misunderstanding of the facts of *Giacalone*. In their appellate brief, the plaintiffs represented that, in *Giacalone*, "the plaintiff was injured at her residence when she was attacked by her neighbor's dog who had escaped from the home the dog resided in," and that the dog had "travelled around 528 feet down the block and across an intersection to reach the plaintiff's residence where he attacked her in her yard." However, contrary to the plaintiffs' assertion, the dog attack in *Giacalone* did not occur at the plaintiff's residence; rather, it occurred "at or near" the dog owner's residence. *Giacalone* v. *Housing Authority*, supra, 306 Conn. 402. The plaintiffs cite to our Supreme Court's decision in *Giacalone* as support for their assertion regarding the location of the attack; the specific page of the *Giacalone* decision cited by the plaintiffs in their appellate brief, however, states: "The complaint alleges that *the plaintiff*, a tenant of the defendant's *residing at 44 Louis Circle* in Wallingford, sustained injuries and other harm after being bitten by a dog *at or near 14 Tremper Drive* in Wallingford, a nearby property of which the defendant is also the landlord." (Emphasis added.) Id. Thus, it is clear that the plaintiff in *Giacalone* was not bitten at her residence but, rather, "at or near 14 Tremper Drive . . . ." Id. Although it is not explicitly evident from our Supreme Court's decision who resided at 14 Tremper Drive, this court's decision, the trial court's decision on the defendant's motion to strike, and the original complaint in *Giacalone* established that the dog owner resided there. *Giacalone* v. *Housing Authority*, 122 Conn. App. 120, 121–22, 998 A.2d 222 (2010), aff'd, 306 Conn. 399, 51 A.3 352 (2012); *Giacalone* v. *Housing Authority*, Superior Court, judicial district of New Haven, Docket No. CV-08-6002041-S (December 19, 2008) (46 Conn. L. Rptr. 829, 829), rev'd, 122 Conn. App. 120, 998 A.2d 222 (2010). The plaintiffs in the present case may have mistakenly believed that 14 Tremper Drive was the plaintiff's residence in *Giacalone* and, as a result, determined the distance between the properties to reach their conclusion that the dog in that case travelled "528 feet" to the plaintiff's residence and attacked her in her yard. This interpretation of the facts in *Giacalone*, however, is incorrect. The plaintiff in *Giacalone* was, in fact, bitten "at or near" the dog owner's residence, that is, property owned and controlled by the landlord. *Giacalone* v. *Housing*

*Authority*, supra, 306 Conn. 402. Therefore, the plaintiffs' argument that *Giacalone* broadened the scope of premises liability is based on a misreading of the record in that case.

Second, the plaintiffs' argument that *Giacalone* supports the notion that "a property owner's duty under premises liability . . . does not evaporate if that harm crosses the property's boundary line," is contrary to our Supreme Court's analysis. As previously discussed in this opinion, in *Giacalone*, our Supreme Court held that "a landlord, in exercising the closely analogous duty to alleviate dangerous conditions *in areas of a premises over which it retains control*, must take reasonable steps to alleviate the dangerous condition created by the presence of a dog with known vicious tendencies *in the common areas of the property*." (Emphasis added.) *Giacalone* v. *Housing Authority*, supra, 306 Conn. 408. The court further emphasized that "[w]hat defines the landlord's duty is the obligation to take reasonable measures to ensure that the *space* over which it exercises dominion is safe from dangers, and a landlord may incur liability by failing to do so." (Emphasis in original.) Id. The court made clear that it is the property lines, and the potential harms within them, that define a landlord's duty. Thus, contrary to the plaintiffs' first claim, *Giacalone* did not expand a property owner's duty beyond the property's boundary line.

For these reasons, we conclude that, within the limited context of an off premises dog attack, a landlord does not owe a duty of care to injured third parties under a theory of premises liability and, therefore, we reject the plaintiffs' first claim on appeal.

II

The plaintiffs next claim that this court should adopt § 379A and, consequently, hold that a genuine issue of material fact exists as to whether its prongs are met. As previously noted in this opinion, § 379A provides: "A lessor of land is subject to liability for physical harm to persons outside of the land caused by activities of the lessee or others on the land after the lessor transfers possession if, but only if, (a) the lessor at the time of the lease consented to such activity or knew that it would be carried on, and (b) the lessor knew or had reason to know that it would unavoidably involve such an unreasonable risk, or that special precautions necessary to safety would not be taken." 2 Restatement (Second), supra, § 379A, p. 283. The plaintiffs argue that we should adopt § 379A because it "strikes a reasonable balance between concerns over the expansion of landlord liability and the need to hold [landlords] accountable . . . ." The defendant counters that this court should not adopt § 379A because it is inconsistent with precedent from both our Supreme Court and this court. We agree with the defendant.

"It is axiomatic that, as an intermediate appellate tribunal, this court is not free to depart from or modify the precedent of our Supreme Court." *Davis* v. *Davis-Henriques*, 163 Conn. App. 301, 312, 135 A.3d 1247 (2016); see also *State* v. *Gonzalez*, 214 Conn. App. 511, 522–23 n.10, 281 A.3d 501 ("[W]e are not at liberty to overrule or discard the decisions of our Supreme Court but are bound by them. . . . [I]t is not within our province to reevaluate or replace those decisions." (Internal quotation marks omitted.)), cert. denied, 345 Conn. 967, 285 A.3d 736 (2022). Furthermore, it is well established that "one panel of this court cannot overrule the precedent established by a previous panel's holding. . . . As we have often stated, this court's policy dictates that one panel should not, on its own, [overrule] the ruling of a previous panel. [That] may be accomplished only if the appeal is heard en banc. . . . Prudence, then dictates that this panel decline to revisit such requests." (Internal quotation marks omitted.) *State* v. *Gonzalez*, supra, 524. Our appellate precedent makes clear that a landlord does not owe a duty of care to someone who sustains injuries from a dog if the attack occurs in an area over which the landlord has no control. Although neither our Supreme Court nor this court expressly has declined to adopt § 379A, as discussed in part I of this opinion, both courts have adhered to traditional principles of premises liability, and those principles run counter to § 379A.

In *Giacalone*, our Supreme Court affirmed that a landlord's common-law duty under a theory of premises liability is applicable to "the dangerous condition created by the presence of a dog with known vicious tendencies," and that the duty is defined by the *space* over which the landlord exercises control. *Giacalone* v. *Housing Authority*, supra, 306 Conn. 408. This court also has abided by these traditional principles of premises liability for dog bite cases in *Stokes*, *Charles*, and, most recently, in *Raczkowski* v. *McFarlane*, 195 Conn. App. 402, 225 A.3d 305 (2020). In *Raczkowski*, the plaintiff was walking in front of a residence when a dog ran out and bit her. Id., 405. Even though the incident took place partly on the defendant landlord's property, this court nonetheless concluded that the landlord did not owe a duty to the plaintiff under a theory of premises liability because the tenant, the dog owner, had exclusive possession of the property under the unique circumstances of that case. Id., 415. Therefore, we concluded that the landlord did not have possession or control of the property. Id. Thus, *Raczkowski* demonstrates this court's continued pattern of strict compliance with traditional principles of premises liability. These principles are inconsistent with the scope of liability that § 379A imposes on a landlord and, thus, adopting it would require us to depart from our appellate precedent, which we are not free to do.[8]

At oral argument before this court, the plaintiffs' counsel claimed that we can adopt § 379A despite this precedent, but we are not persuaded. The plaintiffs' counsel specifically reasoned that we are not prevented from adopting § 379A by *Stokes* because, in that case, we analyzed § 379A in "quite exhaustive detail." The plaintiffs further argue in their appellate brief that, in *Stokes*, we only "stopped short" of adopting § 379A. The plaintiffs are correct that this court discussed § 379A in *Stokes*. *Stokes* v. *Lyddy*, supra, 75 Conn. App. 263. Contrary to the plaintiffs' characterization, however, we did not merely stop short of adopting § 379A in *Stokes*. Rather, without determining whether § 379A should be adopted, we rejected the plaintiff's argument in *Stokes* because the plaintiff in that case had failed to provide any evidence to support the first prong of § 379A, that is, that the lessor at the inception of the lease consented to the dog's presence. Id., 264–65. In fact, the *Stokes* decision contained the following language that suggests that this court would have declined to adopt § 379A even if the plaintiff had provided evidence to support both prongs: "Another public policy concern that influences our decision is our desire to prevent the possible flood of litigation that might result from adopting the rule proposed by the plaintiff. If landlords were held liable for off premises injuries caused by their tenants' dogs, landlords would become the insurers of the general public without end. That should not be encouraged."[9] Id., 272.

The plaintiffs' counsel also maintained at oral argument before this court that this court is not prevented from adopting § 379A by *Giacalone* because it is factually distinguishable, or by *Charles* because, in that case, although the plaintiff asserted a claim under § 379A, the claim was deemed abandoned. These observations, although accurate, do not provide support for the plaintiffs' argument that this court should adopt § 379A. The plaintiffs ignore that, in both cases, our appellate courts adhered to traditional premises liability law with respect to a landlord's liability for dog attacks, and that this court has continued to do so. It is this pattern of strict adherence that requires this court to reject the plaintiffs' invitation to adopt § 379A.

In sum, our appellate precedent continuously has maintained that premises liability does not extend beyond the property line within the specific context of off premises dog attacks. We conclude that we cannot depart from that precedent and, therefore, we reject the plaintiffs' request to adopt § 379A of the Restatement (Second) of Torts.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] "It is well established that a child may bring a civil action only by a guardian or next friend, whose responsibility it is to ensure that the interests of the ward are well represented." (Internal quotation marks omitted.) *Har-*

*ris* v. *Neale*, 197 Conn. App. 147, 149 n.1, 231 A.3d 357 (2020).

[2] Because H-Squared Construction, LLC, is the sole defendant participating in the present appeal, we refer to it throughout this opinion as the defendant and to the other parties by name. The plaintiffs' complaint also included claims against three additional defendants, Regina Barnhill, Keith A. McGraw, and Michael J. Gomez. The remaining twelve counts of the plaintiffs' fourteen count complaint allege that Barnhill, McGraw, and Gomez are the owners and/or keepers of the dog and that they violated General Statutes § 22-357, which is commonly known as the dog bite statute. This statute "imposes strict liability on the 'owner or keeper' of a dog for harm caused by the dog, with limited exceptions." *Giacalone* v. *Housing Authority*, 306 Conn. 399, 405, 51 A.3d 352 (2012). For a plaintiff to assert a claim pursuant to § 22-357 successfully against a defendant, the plaintiff must prove that the defendant is the "owner or keeper" of the dog. *Auster* v. *Norwalk United Methodist Church*, 286 Conn. 152, 153–54, 943 A.2d 391 (2008). Ownership of the premises where a dog lives "unaccompanied by any evidence of caretaking of the dog or actual control over its actions" is insufficient to hold a property owner or landlord liable under this statute. (Internal quotation marks omitted.) Id., 163.

[3] Counts thirteen and fourteen were the only counts of the complaint brought against the defendant and, thus, the summary judgment rendered on those counts is immediately appealable. See Practice Book § 61-3 ("[a] judgment disposing of only a part of a complaint . . . is a final judgment if that judgment disposes of all causes of action in that complaint . . . brought by a particular party or parties").

[4] Section 379A of the Restatement (Second) of Torts provides: "A lessor of land is subject to liability for physical harm to persons outside of the land caused by the activities of the lessee or others on the land after the lessor transfers possession if, but only if,

"(a) the lessor at the time of the lease consented to such activity or knew that it would be carried on, and

"(b) the lessor knew or had reason to know that it would unavoidably involve such an unreasonable risk, or that special precautions necessary to safety would not be taken." 2 Restatement (Second), Torts § 379A, p. 283 (1965).

[5] As alleged in the complaint, Aviles, who was in her third trimester of pregnancy at the time of the incident, sustained extensive injuries, including eighteen punctures /lacerations to her stomach, complete severance of her left ear that was unable to be reattached, and numerous punctures/lacerations to her arm, fingers, breast, back, head, chin, and jaw. Bauza suffered physical injuries to the back of his neck, scalp, and arms, as well as mental health issues after the injury, including adjustment disorder with anxiety, attention deficit hyperactivity disorder, and language disorder involving understanding and expression of language.

[6] Comment (a) to § 379A provides that it should be read together with § 837 of the Restatement (Second) of Torts, which concerns lessor liability for nuisances on the land, and that the comments to § 837 "are applicable so far as they are pertinent." 2 Restatement (Second), supra, § 379A, comment (a), p. 283.

[7] On appeal, the defendant also argues that if, assuming arguendo, we were to adopt § 379A, we should nonetheless affirm the granting of its motion for summary judgment because the plaintiffs did not plead sufficient facts in their operative complaint to establish liability under § 379A, and, additionally, the plaintiffs failed to establish a genuine issue of material fact as to the elements of § 379A. Because we decline to adopt § 379A, we need not address these arguments.

[8] This court previously declined to adopt a Restatement provision that conflicted with existing case law. In *Davis* v. *Davis-Henriques*, supra, 163 Conn. App. 301, the plaintiff requested that this court adopt a provision from the Restatement (Third) of Property, Wills and other Donative Transfers, that was contrary to our Supreme Court's pattern of reliance on Connecticut's wills act, General Statutes § 45a-251 et seq. Id., 311–12. We concluded that, because this court "is not free to depart from or modify the precedent of our Supreme Court," and "[b]ecause our Supreme Court has articulated a 'rule of strict compliance with the wills act,' " we could not depart from that rule and adopt the Restatement provision. Id., 312–13. We reach the same conclusion in the present case.

[9] This court made that statement in response to the plaintiff's argument that the dog bite statute should be extended to landlords. See *Stokes* v. *Lyddy*, supra, 75 Conn. App. 265–66. If the trial court in the present case

had been asked expressly to adopt § 379A, it would have encountered the same concern as the court in *Stokes* because adopting § 379A, like expanding the dog bite statute, would have made landlords liable for off premises injuries and, consequently, required them to become the insurers of the public without end.

---